1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SILVIO PASOVIO,

11              Plaintiff,                    No. CIV S-04-1385 GEB DAD P

12        vs.

13   WARDEN STRATON, et al.,

14              Defendants.              ORDER

15   _____/

16              Plaintiff is a state prisoner proceeding pro se.  Plaintiff seeks relief under 42

17   U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C.

18   § 1915.  This proceeding was referred to the undersigned magistrate judge in accordance with

19   Local Rule 72-302 and 28 U.S.C. § 636(b)(1).

20              Plaintiff's application to proceed in forma pauperis makes the showing required

21   by 28 U.S.C. § 1915(a).  The application will therefore be granted.

22              Plaintiff is required to pay the statutory filing fee of $150.00 for this action.  See

23   28 U.S.C. §§ 1914(a) & 1915(b)(1).  Plaintiff has been without funds for six months and is

24   currently without funds.  Accordingly, the court will not assess an initial partial filing fee.  See 28

25   U.S.C. § 1915(b)(1).  Plaintiff will be obligated to make monthly payments of twenty percent of

26   the preceding month's income credited to his prison trust account.  These payments shall be

1  collected and forwarded by the appropriate agency to the Clerk of the Court each time the

2  amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  See 28 U.S.C.

3  § 1915(b)(2).

4          The court is required to screen complaints brought by prisoners seeking relief

5  against a governmental entity or an officer or employee of a governmental entity.  28 U.S.C.

6  § 1915A(a).  The court must dismiss a complaint if the prisoner's claims are legally "frivolous or

7  malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a

8  defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1) and (2).

9          A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

10  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

11  (9th Cir. 1984).  The court may dismiss a claim as frivolous where it is based on an indisputably

12  meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at

13  327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has both

14  an arguable legal basis and an arguable factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640

15  (9th Cir. 1989); Franklin, 745 F.2d at 1227.

16          A complaint should be dismissed for failure to state a claim upon which relief

17  may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the

18  complaint that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);

19  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing

20  a complaint under this standard, the court accepts as true the allegations of the complaint.  See

21  Hospital Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976).  The court also construes

22  the pleading in the light most favorable to the plaintiff and resolves doubts in the plaintiff's

23  favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

24          The Civil Rights Act under which this action was filed provides as follows:

25          Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the

26          deprivation of any rights, privileges, or immunities secured by the

Constitution . . . shall be liable to the party injured in an action at
law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires an actual connection or link between the actions of the

defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v.

Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

      "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory

personnel are generally not liable under § 1983 for the actions of their employees under a theory

of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the

causal link between him and the claimed constitutional violation must be specifically alleged.

See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441

(9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official

personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d

266, 268 (9th Cir. 1982).

      In the present case, plaintiff is now confined at Mule Creek State Prison.  He

alleges two claims against the warden of California State Prison-Sacramento and five doctors

employed at that facility.  Plaintiff alleges that he was denied life saving medical care in 2000

and again in 2002, in violation of the Eighth Amendment.  He also alleges "confinement in

segregation in violation of the Due Process Clause of the Fourteenth Amendment" and

negligence by all defendants.

      In support of the alleged denial of life saving medical care, plaintiff cites inmate

appeals filed on October 15, 2000, and June 4, 2003.  He claims that he had an emergency need

for medical treatment for hepatitis C, extreme liver pain, fainting, and/or blackouts and that he

was denied medication and treatment.  Plaintiff seeks 12 million dollars to compensate him for

his pain and suffering and the violation of his rights.  Plaintiff also seeks an order enjoining the defendants from denying hepatitis medication, testing at non-prison facilities, liver screening and biopsies, and a painkiller containing codeine instead of Tylenol or Motrin.

Plaintiff's exhibits contradict the alleged denial of life saving medical care, the alleged denial of medication, and the alleged denial of treatment.  In his appeal dated October 31, 2000, plaintiff states that Dr. Penner saw him on October 15, 2000, diagnosed hepatitis C, and said he would treat plaintiff with medication.  Plaintiff complained that two weeks had passed and he had not received medication.  Plaintiff requested a review of his medical records and a private consultation with an outside doctor.  At the informal level, plaintiff was informed that medication had been prescribed and approved, with delivery to begin November 2, 2000. Plaintiff proceeded to the first level, requesting a private consultation with an outside doctor. The appeal was denied on the ground that plaintiff was doing well and there was no medical necessity warranting referral to an outside consultant.  Plaintiff proceeded to the second formal level, requesting a private doctor's evaluation "because I've need [sic] been given a blood test to support the need for the medication I've been prescribed."  Plaintiff was advised that Dr. Penner had prescribed Rebetron and ribavirin for a period of six months and plaintiff should contact his physician at the end of the treatment course to request a repeat blood test for hepatitis C and viral load.  Plaintiff proceeded to the third formal level, complaining that his blood tests were done in 1999 and he wanted a private doctor's opinion.  The third-level response reveals that tests were performed on June 17, 1999, June 23, 1999, August 18, 1999, December 21, 1999, October 17, 2000, and March 22, 2001.  In an interview on July 26, 2001, plaintiff admitted that he had not requested a repeat blood test for hepatitis C and viral load, as recommended.  He demanded that an outside doctor perform the test.  Plaintiff's blood test on March 22, 2001 was negative for hepatitis C.  A blood test was ordered to ascertain plaintiff's viral load.  Plaintiff was advised that an outside consultation was not medically necessary for this test.

/////

1      In his appeal dated June 4, 2003, plaintiff states that he is in constant pain, is

2  having headaches and severe pain in the area of his liver, and needs a liver biopsy but will accept

3  a laparoscopy, computerized axial tomography scan, ultrasound, or radioisotope of his liver and

4  spleen.  At the first formal level, Dr. Penner responded that plaintiff's post-treatment viral load

5  shows no hepatitis C virus and there is no medical need for liver imaging with ultrasound, CAT

6  scanning, or liver biopsy.  He referred plaintiff's request to the medical authorization review

7  committee for a second opinion.  Plaintiff was not satisfied and proceeded to the second formal

8  level, where he was advised that treatment protocol recommends following his viral load and that

9  the committee had considered his case and denied his request for other procedures.  At the third

10  level, plaintiff was advised that his medical condition had been treated with a positive response

11  and there is no medical reason to refer him for a liver biopsy.

12      The unnecessary and wanton infliction of pain constitutes cruel and unusual

13  punishment forbidden by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

14  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

15  In order to prevail on an action alleging cruel and unusual punishment, a prisoner must allege and

16  prove that objectively he or she suffered a sufficiently serious deprivation and that subjectively

17  prison officials acted with deliberate indifference in allowing or causing the deprivation to occur.

18  Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

19      For an Eighth Amendment claim of inadequate medical care, the prisoner must

20  allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to

21  serious medical needs."  Estelle v. Gamble, 429 U.S. at 106.  Such a claim has two elements:

22  "the seriousness of the prisoner's medical need and the nature of the defendant's response to that

23  need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).  A medical need is serious "if

24  the failure to treat the prisoner's condition could result in further significant injury or the

25  'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059 (quoting Estelle v.

26  Gamble, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a

5

1    medical condition that significantly affects an individual's daily activities." Id. at 1059-60.  By

2    establishing the existence of a serious medical need, a prisoner satisfies the objective requirement

3    for proving an Eighth Amendment violation.   Farmer v. Brennan, 511 U.S. 825, 834 (1994).

4            If a prisoner establishes the existence of a serious medical need, he or she must

5    then show that prison officials responded to the serious medical need with deliberate

6    indifference.  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when

7    prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown

8    by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d

9    390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been

10   abridged with regard to medical care, however, "the indifference to his medical needs must be

11   substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

12   cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing

13   Estelle, 429 U.S. at 105-06).  Deliberate indifference is "a state of mind more blameworthy than

14   negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

15   safety.'"  Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

16           Delays in providing medical care may manifest deliberate indifference.  Estelle,

17   429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay, a plaintiff

18   must show that the delay was actually harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th

19   Cir. 1994) (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d

20   1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.

21   Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

22           Mere differences of opinion between a prisoner and prison medical staff as to

23   proper medical care do not give rise to a § 1983 claim.  Jackson v. McIntosh, 90 F.3d 330, 332

24   (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662

25   F.2d 1337, 1334 (9th Cir. 1981).

26   /////

1    Plaintiff's complaint reflects only a difference of opinion between a prisoner and

2    prison medical staff.  Plaintiff has not demonstrated a medical necessity for an outside

3    consultation in 2000 or 2001, or for a liver biopsy in 2003.  The facts alleged do not demonstrate

4    a denial of medication or a denial of treatment.  Plaintiff's Eighth Amendment claim fails to state

5    a claim upon which relief may be granted.  Plaintiff has alleged no facts concerning confinement

6    in segregation, and the documents attached to the complaint shed no light on the alleged due

7    process violation.  The due process claim as alleged is frivolous both factually and legally.

8    Plaintiff's complaint must be dismissed for failure to state any claim upon which

9    relief may be granted.  While it does not appear that plaintiff can cure the defects of either of his

10   claims, the court will dismiss the complaint with leave to amend.

11   If plaintiff chooses to file an amended complaint, he must allege facts in the

12   amended complaint that demonstrate how the acts or conditions complained of resulted in a

13   deprivation of his federal constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir.

14   1980).  The amended complaint must allege in specific terms how each named defendant was

15   involved in the alleged deprivation of rights.  There can be no liability under 42 U.S.C. § 1983

16   unless there is some affirmative link or connection between a defendant's actions and the

17   claimed deprivation.  See Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164,

18   167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

19   Plaintiff is informed that an amended complaint must be complete in itself, as if it

20   were the first complaint filed in the case.  Local Rule 15-220; Loux v. Rhay, 375 F.2d 55, 57 (9th

21   Cir. 1967).

22   In accordance with the above, IT IS HEREBY ORDERED that:

23   1.  Plaintiff's application to proceed in forma pauperis is granted.

24   2.  Plaintiff is obligated to pay the statutory filing fee of $150.00 for this action.

25   The fee shall be collected and paid in accordance with this court's order to the Director of the

26   California Department of Corrections filed concurrently herewith.

1          3.  Plaintiff's complaint is dismissed with leave to amend.

2          4.  Plaintiff is granted thirty days from the date of service of this order to file an

3   amended complaint that complies with the requirements of the Civil Rights Act, the Federal

4   Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the

5   case number assigned to this case and must be labeled "Amended Complaint"; failure to file an

6   amended complaint in accordance with this order will result in a recommendation that this action

7   be dismissed for failure to state a claim upon which relief may be granted.

8   DATED: July 25, 2005.

9

10   _____
     DALE A. DROZD
11   UNITED STATES MAGISTRATE JUDGE

DAD:13
paso1385.14a

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26